UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00739-FDW

| | |
|---|---|
| HAROLD L. KISER, )<br>)<br>　　Plaintiff, )<br>)<br>vs. )<br>　　　　　　　　　　　　　　　　　)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of Social Security, )<br>)<br>　　Defendant. )<br>　　　　　　　　　　　　　　　　　) | ORDER |

THIS MATTER is before the Court on Plaintiff Harold L. Kiser's Motion for Summary Judgment (Doc. No. 13), filed May 21, 2018, and Defendant Acting Commissioner of Social Security Nancy A. Berryhill's ("Commissioner") Motion for Summary Judgment (Doc. No. 15), filed July 6, 2018. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Supplemental Social Security Income ("SSI") and Disability Insurance Benefits ("DIB").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED; the Commissioner's Motion for Summary Judgment is GRANTED; and the Commissioner's decision is AFFIRMED.

I. BACKGROUND

Plaintiff originally filed a Title XVI application for supplemental security income on December 23, 2009, which was subsequently denied. (Tr. 34). This previous claim was denied by ALJ Wendell Sims on December 1, 2011, becoming the final decision when the Appeals Council denied request for review on October 26, 2012. (Tr. 34). Thereafter, Plaintiff was found

eligible for Medicaid benefits on August 14, 2013, receiving a rating of "disabled" under Medicaid eligibility rules. (Tr. 48).

Plaintiff subsequently filed an application for Title II and Title XVI benefits on December 12, 2012 (Tr. 34). Plaintiff alleges disability beginning July 21, 2009 (Tr. 34). After his application was denied initially and upon reconsideration, Plaintiff requested a hearing (Tr. 34). After a hearing on September 8, 2014, (Tr. 34), the ALJ issued an unfavorable decision (Tr. 31). Plaintiff's subsequent request for review by the Appeals Council was denied. (Tr. 1). Plaintiff now appeals this decision to this Court.

In the case at bar, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 21, 2009 and met the insured status requirements through December 31, 2018. (Tr. 37). The ALJ found Plaintiff to have the following severe impairments: "prostate cancer, urinary tract disorder, degenerative disc disease, and organic mental disorder (20 CFR 404.1520(c) and 416.920(c))[.]" (Tr. 38). The ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart B, App. 1. (Tr. 40). The ALJ then found Plaintiff had the Residual Functional Capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), with the following additional limitations:

> The claimant requires a cane for ambulation. The claimant occasionally can climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant cannot climb ladders, ropes, and scaffolds. The claimant must avoid concentrated exposure to unprotected heights, moving mechanical parts, extreme heat, extreme cold, humidity, dust, odors, fumes, and pulmonary irritants. The claimant cannot operate motorized equipment as part of his job. The claimant can perform work involving simple, routine, and repetitive tasks and making simple, work-related decisions. The claimant can tolerate only simple changes in the work setting. The claimant can have occasional interaction with co-workers, and no interaction with the public.

(Tr. 42). In response to a hypothetical that factored in Plaintiff's age, education, work experience, and RFC, the vocational expert ("VE") testified that Plaintiff could perform his past relevant work as a document preparer/scanner, final assembler, and addresser, in addition to others' jobs that exist in significant numbers in the national economy. (Tr. 50). As a result, the ALJ concluded Plaintiff was not disabled, as defined under the Social Security Act, from July 21, 2009, through the date of the ALJ's decision. (Tr. 50). Plaintiff has exhausted all administrative remedies and now appeals pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). We do not reweigh evidence or make credibility

determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," we defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996

4

> WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862. Additionally, the Fourth Circuit in Thomas v. Berryhill, has held "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation, is just as important as the other two." Thomas v. Berryhill, No. 17-2215 at *6 (4th Cir. 2019).

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

III. ANALYSIS

Plaintiff raises five separate issues in this case on appeal. First, Plaintiff contends the ALJ used an RFC determination that did not give proper weight to the Medicaid finding of disabled. (Doc. No. 14 at 3). Second, Plaintiff argues the ALJ did not explain why limitations in medical opinion he gave significant weight are not included in the RFC. (Doc. No. 14 at 3-4.) Third, Plaintiff asserts the ALJ did not consider and weigh every medical opinion received and contained in the record, specifically that of Dr. Bonner. (Doc. No. 14 at 4.) Fourth, Plaintiff alleges that the vocational witness appears to conflict with the Dictionary of Occupational Titles ("DOT"), and the ALJ accepted their testimony without first obtaining an explanation. Id. And fifth, Plaintiff claims the ALJ did not provide legally sufficient reasons supported by substantial evidence for finding Plaintiff's testimony not entirely credible. Id. Upon review, this Court finds the ALJ applied the correct legal standards, and the Commissioner's decision is affirmed.

A. Medicaid Disability Determination

First, Plaintiff contends that the ALJ failed to afford proper weight to the Medicaid determination of disabled. A North Carolina Medicaid decision is not binding on the Social Security Administration but does constitute evidence the ALJ must consider when reaching a determination. See 20 C.F.R. §§ 404.1504, 416.904. Additionally, the Fourth Circuit has found an ALJ must provide "persuasive, specific, valid reasons for doing so that are supported by the record" when affording less than substantial weight to a disability decision rendered by another government entity. Woods v. Berryhill, 888 F.3d 686, 692 (4th Cir. 2018) (quoting McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002)).

Here, the ALJ evaluated the Medicaid decision and provided "persuasive, specific, and valid reasons" for affording it less than substantial weight.[1] After carefully evaluating the Plaintiff's impairments, the ALJ concluded Plaintiff's daily activities and history of memory impairment only constitute mild and moderate limitations. (Tr. 48). Further, the ALJ determined these impairments do not rise to the listing of severity based on the record, (Tr. 48), based on Plaintiff's medical records from the Alzheimer's Memory Center, (Tr. 772), and findings of the state agency psychological experts, (Tr. 112, 144). Plaintiff argues the ALJ erred by failing to explain why Listing 12.05 was not met or medically equaled. (Doc. No. 14 at 6). However, the ALJ reasonably believed the evidence contained in the record more appropriately supported evaluating for an organic mental disorder under Listing 12.02, conducting a thorough, specific, and valid analysis under this listing. (Tr. 38, 40-41, 45). Additionally, Plaintiff raises no arguments for why Listing 12.05 was implicated by his impairments. (Tr. 349). As such, the ALJ's decision to afford the Medicaid finding less than substantial weight in reaching the RFC determination was proper.

B. RFC Determination

Plaintiff also challenges whether the ALJ sufficiently explained the basis for the RFC finding. Upon review, this Court cannot re-weigh conflicting evidence or make credibility determinations, Hays, 907 F.2d at 1456, and instead only considers whether "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" exists, Johnson, 434 F.3d at 653 (citations omitted). Further, "a proper RFC analysis has three components: (1)

---

[1] Here, the ALJ specifically noted: "Disability decisions by any other governmental agency are based on that agency's rules and are not binding on our agency (20 CFR 404.1504 and 416.904 and SSR 06-3p). Additionally, I find the record before me does not support this claim." The ALJ goes on to discuss his reasoning behind deviating from the Medicaid determination based on his findings of Plaintiff's limitations and history of memory impairment contained in the record. (Tr. 48).

7

evidence, (2) logical explanation, and (3) conclusion," the explanation being just as critical a factor as the other two. Thomas, No. 17-2215 at *6.

Here, the ALJ properly explained how he evaluated the opinions of the state agency medical experts in reaching the RFC determination. In forming the RFC, the ALJ found Plaintiff can do "simple, routine, repetitive tasks and mak[e] simple, work-related decisions." (Tr. 42). Plaintiff contends the ALJ, despite stating he gave great weight to the opinions of state agency psychological consultants, did not adequately explain why some of these opinions were not included in the RFC. (Doc. No. 14 at 7). Plaintiff specifically notes, "The ALJ did not discuss [] portions of the consultants' opinions" at pages 117-18, 131-32, 149-50, and 165-66 of the Administrative Record. Id. However, in forming the RFC determination, the ALJ relied on the narrative discussions rather than the worksheets contained in the reports of Dr. Jonathan Mayhew and Dr. Steven Salmony. (Tr. 47). Regarding the worksheets, the doctors themselves specify "[t]he questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s)" following the questions, (Tr. 116, 130, 148, 164), which the ALJ properly analyzed and explained in his decision. (Tr. 47). This Court has previously recognized the ALJ does not err by discussing the narrative RFC opinion rather than the worksheet answers. See Watts v. Berryhill, No. 3:16-CV-00850-FDW, 2017 WL 6001639, at *6 (W.D.N.C. Dec. 4, 2017) (holding the ALJ does not err by discussing the narrative RFC opinion instead of the "worksheet" answers). Accordingly, Plaintiff has presented no basis for reversal or remand of the ALJ's determination. The ALJ's determination is supported by substantial evidence.

C. Medical Opinions of Record

Plaintiff argues the ALJ failed to weigh every medical opinion in the record as required by 20 C.F.R. §§ 404.1527, 416.927. (Doc. No. 14 at 12). If the ALJ does not accept all or parts of a medical opinion, then the ALJ is required to explain her reasons for rejecting the probative evidence that she did not accept. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also SSR 96-8p ("[The] RFC assessment must always consider and address medical source opinions. If the ALJ's RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.") However, an ALJ considers only the evidence and opinions contained in the case record. 20 C.F.R. §§ 404.1545(a)(1), 404.1527(b), 416.927(b), 416.945(a)(1).

Here, Plaintiff argues that the ALJ erred by not evaluating the June 2015 opinion of Dr. Bonner. The letter, dated June 24, 2015, appears to be a conclusory opinion stating: "[Plaintiff] has multiple problems including memory loss, lumbar degenerative disc disease and arthritis, neuropathy, COPD, diabetes, chronic low back pain, hyperlipidemia, hypertension, and is not a candidate for a 40 hour work week to any job that I am aware of. I would consider him completely disabled for employment[.]" (Tr. 1150). The opinion appears to be a two-sentence summary conclusion of Dr. Bonner's 2012 opinion, which the ALJ evaluated in reaching the RFC determination. (Tr. 46). Further, the ALJ properly afforded little weight to this finding because an opinion that an individual is disabled is not a medical opinion, but rather an issue reserved to the Commissioner. (Tr. 46, 1005; see 20 C.F.R. §§ 404.1527(d), 416.927(d)).

Additionally, the June 2015 letter from Dr. Bonner was submitted after the ALJ issued his decision on May 7, 2015, (Tr. 50), and therefore was not contained in the initial record. The Appeals Council examined the letter as part of Plaintiff's request for a review of the ALJ's initial decision but declined to grant this request to supplement. (Tr. 10). Plaintiff fails to assign error

to the Appeals Council holding there was not a reasonable probability that the duplicative June 2015 opinion would have changed the outcome of the decision when they declined review. As such, the ALJ did not err in evaluating all the medical opinions contained in the record at the time of decision and properly abided by the regulation's requirements.

    D. Apparent Conflict in VE Testimony

Next, Plaintiff contends the ALJ accepted testimony from the VE that appears to conflict with the DOT without first obtaining an explanation. The VE testified that an individual of Plaintiff's age, education, work experience, and RFC could perform work such as 1) document preparer/scanner, DOT # 249.587-018, for which there are 14,000 jobs nationwide; 2) final assembler, optical goods, DOT # 713.687-018, for which there are 900 jobs nationwide; and 3) addresser, DOT # 209.587-010, for which there are 700 jobs nationwide. (Tr. 50). SSR 00-4p requires if a VE's testimony appears to conflict with the DOT, an ALJ must obtain a reasonable explanation for the apparent conflict. SSR 00-4p, 2000 WL 1898704 at*4 (S.S.A.). The Fourth Circuit has further stated that "the context of the word "apparent" in SSR 00-4p . . . makes plain that the Ruling intends the latter meaning -- that the ALJ must identify where the expert's testimony seems to, but does not necessarily, conflict with the Dictionary." Pearson v. Colvin, 810 F.3d 204, 209 (4th Cir. 2015).

Plaintiff first argues the DOT description for the job of "addresser" "raises serious doubts about the viability of such an occupation in the current national economy." (Doc. No. 14 at 17). However, Plaintiff submitted no evidence that the jobs of "addresser" and "final assembler" no longer exist. The Fourth Circuit has noted that a relatively small number of jobs constitute substantial evidence to support a nondisability finding. See Hicks v. Califano, 600 F.2d 1048, 1051 n. 2 (4th Cir. 1979) ("We do not think that the approximately 110 jobs testified to by the VE

constitute an insignificant number."). As such, Plaintiff's argument as to the viability of these occupations in the current national economy is not persuasive with the Court and does not rise to the level of an apparent conflict.

Plaintiff additionally claims that "all the jobs identified by the vocational witness and accepted by the ALJ to deny [Plaintiff]'s application conflict the ALJ's limitation to simple, routine, repetitive tasks with one-to-three steps of instructions." (Doc. No. 14 at 21-22). But, as the Commissioner notes, the RFC does not limit Plaintiff to jobs involving one-to-three step instructions. (Tr. 42; Doc. No. 16 at 12).[2] Plaintiff further contends:

> The residual functional capacity assessment limiting to simple, routine repetitive tasks appears to be more consistent with GED Reasoning Level 1 than 2 or 3 because the abilities to perform simple tasks in the residual functional capacity assessment are like the provision for applying the commonsense understanding to carry out simple instructions at GED Reasoning Level 1.

(Doc. No. 14 at 20). However, this Court does not find an apparent conflict in which inquiry by the ALJ was required. See Street v. Berryhill, No. 1:17-CV-00204-FDW, 2018 WL 1935866, at *6 (W.D.N.C. Apr. 24, 2018) ("[T]his Court has consistently held there is no apparent conflict between an RFC limitation to simple, routine, repetitive work and Reasoning Level 2 occupations."). Accordingly, the Court does not find the ALJ erred in accepting the VE's testimony and sufficiently complied with SSR 00-4p.

E. Credibility Determination

Last, Plaintiff contends the ALJ erred by not explaining how he evaluated the credibility of Plaintiff's alleged limitations in determining whether his claims were supported by substantial

---

[2] Plaintiff's RFC does not limit the number of instructions Plaintiff is able to follow, resulting in no apparent conflict for the ALJ to identify. The Court acknowledges that the Fourth Circuit in Thomas v. Berryhill has held an apparent conflict arises between an RFC of "short, simple instructions" and "detailed but uninvolved . . . instructions" in jobs requiring Level 2 reasoning. Thomas v. Berryhill, No. 17-2215 at *9 (4th Cir. 2019). Here, Plaintiff's RFC of "simple, routine, repetitive tasks" does not conflict with the DOT definition of Level 2 reasoning.

11

evidence. (Doc. No. 14 at 22). The ALJ's decision states: "After careful consideration of the evidence, I find the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 43). Plaintiff claims this "boilerplate credibility finding" is meaningless, (Doc. No. 14 at 23), but does not acknowledge the subsequent paragraph, which states: "Specifically, I find the claimant's allegations of disabling symptoms and limitations are greater than what would be expected, based on the objective medical evidence. Overall, the treatment records simply do not support the level of distress, pain, limited functioning or other symptomatology alleged by the claimant." (Tr. 43).

As the Commissioner notes, the ALJ pointed out several inconsistencies in the record throughout the decision which were factored into his credibility determination. Plaintiff alleged his obstructive sleep apnea was a severe impairment despite a report that it was controlled through use of a CPAP. (Tr. 38, 295). Inconsistencies with Plaintiff's claimed limitations regarding hypertension, (Tr. 39), as well as contradictions related to Plaintiff's alleged pain contributing to significant standing, walking, and sitting limitations, (Tr. 42, 44, 370), were also considered in the credibility determination. Additionally, the ALJ compared Plaintiff's complaints of memory loss with mental status examinations, (Tr. 45, 592, 600), and complaints of irritability and depression to his report that he was doing well overall after visiting with family and friends. (Tr. 45, 1132, 1142). According, the Court finds the ALJ sufficiently evaluated the credibility of Plaintiff's alleged limitations in reaching his decision.

## IV. CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 10) is DENIED; the Commissioner's Motion for Summary Judgment (Doc. No. 12) is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: March 13, 2019

Frank D. Whitney
Chief United States District Judge